## CHRISTIAN ET AL. VS. ASHLEY COUNTY.

The county court has jurisdiction to render judgment against a delinquent collector or his sureties, for the county revenue which he has collected and failed to pay over as required by law. (*Gould's Dig.,* ch. 147, secs. 37–45; *Lawson vs. Pulaski county,* 3 *Ark.; Goree vs. State,* 22 *ib.,* 235; *Jones vs. State,* 14 *ib.,* 172.)

A statement made by the clerk, in the transcript sent to this court, that a notice ordered by the court had been issued, but had been mislaid, is no evidence of that fact.

OF THE STATE OF ARKANSAS. 143

TERM, 1863.]          Christian et al. vs. Ashley County.

No notice to the delinquent collector of the preliminary adjustment of his accounts is necessary, but he must have notice before final judgment. (*Trice vs. Crittenden county*, 2 *Eng.*, 162; *Carnall vs. Crawford county*, 6 *ib.*, 623.)

A *scire facias* issued against the collector and his sureties, after a preliminary adjustment of his accounts, commanding them to appear and show cause why judgment should not be rendered against them for the moneys due the county, etc., and duly served before final judgment, is a sufficient notice.

The securities in a collector's bond are liable for the amount of the penalties imposed upon him for his delinquencies.

The county court properly imposed the penalty of twenty-five per centum upon the amount of revenue found to be due, and fifty per centum per annum thereon. (*Carnall vs. Crawford county*, 6 *Eng.*, 625.)

The funds arising from county licenses, fines and forfeitures, constitute a part of the revenue of the county; the collector is required to settle with the county court therefor; and on his failure to do so, his securities are liable for the same. (*Lawson vs. Pulaski county, ubi sup.*)

The sureties in a collector's bond given for the year 1859, are not liable for moneys collected for 1860.

It appearing in this case that a part of the moneys had been collected for 1859 and and a part for 1860, and that the collector had paid over an amount exceeding the sum collected for the latter year, which amount was duly credited to him in rendering the judgment: it does not affirmatively appear that the collector and his sureties were charged in the final judgment, with any revenues collected after the year 1859, which was the period of responsibility of the sureties.

There being no evidence as to whether the sums paid by the collector were appropriated in the adjustment of the accounts, to the payment of the amount due for the year 1860, the court must presume in favor of the correctness of the judgment of the county court. (*Lawson, ex parte, ubi, sup.*)

In entering the final judgment, the county court did not credit the collector with the two last payments, but directed them to be credited on the execution. *Held*, That it would have been proper to have given credit for them in entering the judgment; but the direction that they should be credited on the execution was in effect the same, the penalty only being upon the remainder of the judgment after the deduction of these payments.

The sureties were not released by the failure of the county court to compel the collector to settle at the time required by statute. (*Christian, ex parte*, 23 *Ark.*, 641.)

The transcript showing that the proceedings were had "in the county court of the county of Ashley, the Hon. R. T. Harris, judge, etc., presiding, assisted by Esq's. John Hill and Samuel H. Moore," it will be presumed that the two last named persons were the associate justices.

*Appeal from Ashley Circuit Court.*

Hon. JOHN C. MURRAY Circuit Judge.

GARLAND & RANDOLPH, and HUTCHINSON, for appellants.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

By a summary proceeding in the county court of Ashley county, a judgment was rendered against James Norris, as a delinquent collector, and Joseph D. Christian and Milton C. Comer, sureties in his official bond, for balance of revenue ascertained to be due from him to the county, with the penalties prescribed by the statute for his defalcations. Christian and Comer removed the proceedings into the circuit court, by certiorari, where the judgment of the county court was affirmed, and they appealed to this court.

The counsel for the appellants have made and discussed nine objections to the regularity of the proceedings and judgment of the county court.

1. The first objection goes to the root of the whole matter. It is that the county court had no jurisdiction to render judgment against the delinquent collector, or his securities, for the county revenue which he had collected, and failed to pay over to the county treasurer, as required by law.

The argument is, that though the constitution confers jurisdiction upon the county court "in all matters relating to county taxes," yet when the collector has collected the taxes, and put the money in his pocket, instead of paying it over to the treasurer, it loses its character as *taxes*, and the county court ceases to have any jurisdiction over it as such, and from thenceforward it is to be regarded simply as a money demand due from the collector to the county, to be recovered by the appropriate action in the circuit court.

If this argument be sound, the statute which authorizes the county court to proceed summarily to ascertain the amount of

revenue due from a delinquent collector, and to render judgment against him and his securities therefor, and which has stood upon the statute book, and been administered for nearly a quarter of a century, (*Gould's Dig.*, 147, *secs.* 37 *to* 45) was a grave infraction of the constitution : and this court has fallen into, and persisted in an unfortunate error, in maintaining the validity of the statute, and asserting the jurisdiction of the county court, in a series of decisions, commencing with *Lawson vs. Pulaski county*, 3 *Ark.*, 1, and coming down to *Goree et al. vs. State, use, etc.*, 22 *Ark.*, 236.

In *Jones et al. vs. the State, use, etc.*, 14 *Ark.*, 172, this court held that an action. could not be maintained upon the bond of a delinquent collector, in the circuit court, until the county court had adjusted his accounts, and proceeded to render judgment against him for the amount due, etc.

The court, in that case, said : "The county court is the forum where the liability of the collector, upon which that of his securities depends, is to be ascertained and evidenced by its records. An adjudication in that forum is conclusive evidence against the securities, as well as the collector, in an action upon his bond in the circuit court. There can be no liability upon the collector's bond without such adjudication, unless the circuit court can, in an action upon the bond, draw to itself, in a collateral way, a jurisdiction to investigate and settle the accouts of delinquent officers for the collection of revenue, which appropriately belongs to the county court."

2. The second objection is that Norris had no notice of the adjustment of his accounts by the county court, and that the adjustment rendered against him thereon was void, etc.

At the July term, 1860, the county court made an order that Norris be notified to appear at the next term and settle his accounts, and pay over all revenue in his hands, or that the court would proceed to make settlement thereof, etc.

The clerk states, in a note, that notice was issued in accordance with this order, but that it had been mislaid, and hence could,

not be copied in the transcript, etc. But this note of the clerk amounts to nothing, and it may be conceded that no notice was served.

At the October term, 1860, the court proceeded to adjust his accounts, (the record entry reciting that he had been required at the preceding term to make settlement and failed to do so,) and ascertain and state the amount of revenue due from him to the county: and directed that he be allowed no commissions: and that, if he failed to pay over the amount found to be due within ten days, etc., the clerk should charge him with twenty-five per cent. thereon, and upon the motion of the county treasurer, issue a *scire facias* against him and his securities to appear at the next term, and show cause why judgment should not be rendered against them for the moneys due the county, etc. The *scire facias* was accordingly issued, and served upon the parties in due time.

Up to this time no judgment had been rendered against the collector. The adjustment of his accounts was a preliminary proceeding, as was the direction to the clerk to charge him with the twenty-five per cent. upon the amount found due, upon his failure to pay the money over, etc. The account and the penalty, as well as the matter of commissions, remained under the control of the court, and it had the power, at the next term, on the return of the *scire facias*, upon a showing of the delinquent collector, or his securities, to re-adjust the account, remit the penalties, etc.

In *Trice vs. Crittenden county*, 2 *Eng. R.*, 162, it was decided that no notice to the delinquent collector of the preliminary adjustment of his accounts, etc., was necessary; but that before final judgement could be rendered, he must have notice, etc., and this decision was approved in *Carnall vs. Crawford county*, 6 *Eng.*, 623.

In this case, before any judgment was rendered against the delinquent collector or his securities, they were duly served with the *scire facias*, and allowed full opportunity at the return term, in January, 1861, to appear and make defence.

3. The *third* objection is that the judgment against the sureties for the penalties to which the statute· subjects the delinquent collector, is erroneous.    In other words, that they are only liable, under the condition of the collector's bond, for the amount of revenue which is ascertained to be due from him to the county, and not for the penalties imposed upon him for his defalcations— that he alone is liable for them.

The condition of the collector's bond is " for the faithful performance of the duties of his office, and for the well and truly paying over all moneys collected by him by virtue of his office." *Dig., ch.* 148, *sec.* 52.

It is true that the condition of the bond does not recite that either the collector or his sureties shall be liable for any penalties for his failure to pay over moneys collected by him, but the parties must be understood to contract in reference to the law in force at the time the bond is executed.

The law clearly imposes penalties upon the delinquent collector, and we think it was the intention of the legislature to make the sureties liable for the amount of penalties imposed upon him for his delinquencies.    See *Gould's Dig., ch.* 147, *secs.* 37 *to* 45.

The policy of the statute in prescribing these penalties was not to enhance the revenue by collecting them of the officer, but to hold them over him as an inducement to be prompt and vigilant in paying over revenue collected by him.    If he be insolvent, he may have no personal dread of the penalties, yet the ordinary feelings of a just minded man, would prompt him to pay over the revenue at the time required by law, to save his sureties from incurring responsibility for severe penalties, if by law they are subject to such responsibility.    If the sureties were not liable for these penalties, the motive for them to see that the collector was prompt in paying over the revenue would be lessened : and when the amount due from him was ascertained, in case of his insolvency, they might avail themselves of every means of delaying payment, if by such delay they incurred no penalties.    It is of the utmost importance to the public that the revenue should be

promptly paid over by the collector, and the policy of the legislature in prescribing the penalties was to promote such promptness; and we think this policy would be in a measure defeated, if the statute were so construed as to hold that the sureties were not liable to pay the penalties for their defaulting principal.

4. The *fourth* objection is that the county court rendered judgment for the amount of revenue found to be due from Norris, with the penalty of twenty-five per cent. added thereto, and fifty per cent. per annum thereon—thus imposing penalty upon penalty.

This was in accordance with the statute (*sec.* 41) as held in *Carnall vs. Crawford county*, 6 *Eng.*, 625.

5. The *fifth* objection is that Norris was charged, as collector, with the amount of county licenses, fines and forfeitures collected by him.

The argument is, that he was liable as sheriff, and not as collector, for moneys collected from such sources.

The funds collected from county licenses, fines and forfeitures, constitute part of the revenue of the county, the collector is required to settle with the county court therefor, as such, and on failure to do so, he and his sureties are liable to be proceeded against, under the statute which we have been considering, whatever may be the liability, for fines and forfeitures collected by him, upon his bond as sheriff. See *Gould's Dig.*, *ch.* 148, *secs.* 69 *to* 70, *etc.;* *Lawson vs. Pulaski county*, *ubi sup.*

6. The sixth objection is that the county court included in the judgment rendered against the appellants, the amount of county licenses, fines and forfeitures collected by Norris in the year 1860, when it only appears from the record that they were securities on his official bond, as collector, for the year 1859.

The record entry of the adjustment of the accounts of Norris, made at the October term, 1860, is in substance as follows: "The court has ascertained the balance due the county to amount to the sum of $7,754.07, composed of the following items, to wit: $9,116.34, amount due on tax book for the year 1859, and $1,698.08 for county licenses, fines and forfeitures, due up to June

1, 1860, and $288 for county licenses, fines and forfeitures due from June 1, 1860, to October term of this court, 1860, upon which he has paid to the county treasurer the sum of $3,348.30, leaving balance due as above of $7,754.07."

From this entry it appears that the two sums with which Norris was charged for licenses, fines and forfeitures, amounted to $1,986.03, and it may be taken for granted that both sums were collected by him after the expiration of the time for which the appellants were responsible for his official conduct, as sureties on his official bond for the year 1859.

It appears that he had paid over before the settlement the sum of $3,348.30. How this payment was appropriated does not appear. It is certainly not shown that it was appropriated exclusively to the amount due upon the tax book for 1859, leaving the amount due for licenses, fines and forfeitures wholly unpaid. But for another record entry, to be noticed presently, it might be presumed for the purpose of sustaining the final judgment of the county court in the matter, that the amount due for licenses, fines and forfeitures in 1860, was entirely extinguished by the payment.

But by a record entry made at the January term, 1861, to which term the *scire facias* was made returnable, and at which the final judgment was rendered, it is shown that Norris appeared, and filed two receipts for additional payments made to the county treasurer, dated 30th January, 1861: one for $2,000.00, on account of revenues of the county for the year 1859, and the other for $500.00 on account of revenues collected by him for the year 1860, with which the court directed him to be credited.

The judgment of the county court can only be quashed in this proceeding for errors to the prejudice of the appellants affirmatively appearing upon the face of the record. It certainly does not affirmatively appear that they were charged in the final judgment with any revenues collected by Norris for the year 1860, after the expiration of the period for which they became responsible for his official conduct. They may or may not have been, and the matter being left to presumption, we must presume in

favor of the correctness of the judgment of the county court. *Lawson vs. Pulaski county, ubi. sup*.

Moreover, the record entry of the final judgment states that it appeared to the court that Christian and Comer were the sureties of Norris on his bond as collector for the period in which his delinquency occurred, etc.

The appellants had due notice to appear before the county court and make defence before final judgment. Had they appeared and caused it to be shown of record that they were only the sureties of Norris for the year 1859, and not for 1860, and that in the adjustment of his accounts, he had been charged with revenues for 1860, which were not discharged by the payments made by him, if the county court had refused to correct the error, the judgment might have been subject to quashal, in this proceeding; but they failed to avail themselves of the opportunity thus afforded them to make defence, and if the county court committed an error to their prejudice which does not affirmatively appear of record, they must abide the consequences of their own neglect.

7. The *seventh* objection is that in entering the final judgment the county court did not credit Norris with the amount of the last two payments made by him, but directed the amount to be credited on the execution.

The payments having been made before final judgment, it would have been proper to have given credit for them in entering the judgment, but the direction of the court that the amount of the payments be endorsed, as a credit on the execution is in effect the same; for in collecting the debt, the sheriff will credit the payments upon the amount of the judgment, as of the day on which they were made, and calculate the fifty per cent. per annum penalty upon the remainder, and not upon the entire amount of the judgment, as supposed by the counsel for the appellants.

8. The *eighth* objection, that the sureties of Norris were released by the failure of the county court to compel him to settle at the

time required by the statute, was decided against the appellants by this court in *Christian et al. ex parte*, 23 *Ark.*, 641.

9. The *ninth* and last objection is that the record fails to show that the proceedings were had before a competent county court.

The transcript of the record before us shows that the " proceedings were had before and in the county court of the county of Ashley, the Hon. P. T. Harris judge, etc., presiding, assisted by Esq's., John Hill and Samuel H. Moore."

The argument is that the title *esquire* is not unfrequently applied to officers of all grades, to attorneys at law, and is bestowed upon persons at pleasure as an expression of respect; and that it may have been used in some such sense in the instance in question, and not to indicate that the persons who sat in the county court with, and assisted the presiding judge to hold the court, were justices of the peace.

But looking at the expression in the connection in which it is used in the record entry, we think it will hardly be a violent presumption to conclude that it was meant to indicate that the persons to whom it was applied were the associate justices.

The judgment of the circuit court must be affirmed.